## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-20334-BLOOM/Louis

CWELT-2008 SERIES 1045 LLC,

      Plaintiff,

v.

PHH CORPORATION,

      Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** is before the Court upon Defendant, PHH Corporation's ("Defendant")

Motion to Dismiss the Amended Class Action Complaint, ECF No. [31] ("Motion"). Plaintiff filed

its Response in Opposition, ECF No. [37] ("Response"), to which Defendant filed its Reply, ECF

No. [38] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in

this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the

Motion is granted.

### I.      BACKGROUND

This putative class action lawsuit arises out of Defendant and its predecessor's alleged

wrongful collection of funds charged to condominium owners for the purchase of flood and/or

hazard insurance in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat.

§ 501.201, *et seq.* ("FDUTPA"). Defendant is a mortgage servicing company. ECF No. [25] at

¶ 1.[1]

---

[1] In October 2018, Defendant was purchased by Ocwen Financial Corporation ("Ocwen"), and
effective June 6, 2019, all loans serviced by Ocwen were transferred to Defendant. *Id.* at ¶ 5.

According to the Amended Complaint, ECF No. [25] ("Complaint"), the "standardized mortgage forms that PHH services permits loan servicers to unilaterally charge, and collect, funds from condominium owners subject to these mortgages, but only where the condominium association has not already purchased flood or hazard insurance that covers the member condominiums." *Id.* at ¶ 2 (emphasis omitted). Plaintiff asserts that Defendant and "its predecessor servicer from whom it acquired these loans to service, collects premiums for flood or hazard insurance even where it knows that the subject property is already covered by a master or blanket insurance policy, making additional flood and/or hazard insurance both superfluous and in breach of the mortgage contracts PHH services." *Id.*

In August 2014, Plaintiff purchased a condominium unit in Miami Beach, Florida at a condominium association foreclosure sale. *Id.* at ¶ 8. By purchasing the condominium, Plaintiff took title to the property subject to the previous owner's mortgage,[2] which mortgage was the subject of a foreclosure action. *Id.* at ¶ 9. According to the Amended Complaint, the mortgage included a "Condominium Rider"[3] providing that so long as the mortgagor's "Owners

---

[2] The Amended Complaint does not attach a copy of the mortgage, which was publicly filed. *See* ECF No. [31] at 2. However, Defendant has attached a copy of it to the Motion, *see* ECF No. [31-1], and requests the Court to take judicial notice of it. *See* ECF No. [31] at 2. Because the mortgage is a public filing and is referenced throughout the Amended Complaint, the Court will take judicial notice of the mortgage. *See, e.g.*, *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081-82 (S.D. Fla. 2019) ("A court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents does not convert a motion to dismiss into one for summary judgment."); *Correa v. BAC Home Loans Servicing LP*, No. 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *4 (M.D. Fla. Apr. 9, 2012) (taking judicial notice of mortgage and assignment of mortgage); *see also Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009) ("When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment.")

[3] Section B of the Condominium Rider states as follows:

Association" maintained a master or blanket insurance policy that protected against such losses as earthquakes and floods, then the mortgagee waived the mortgage provision requiring monthly payments to the mortgagee to pay for yearly premium installments for the purchase of such property insurance. *Id.* at ¶ 10. Plaintiff represents that the Park Gardens Owners Association ("Owners Association") has always maintained a blanket insurance policy for flood and hazard covering all units within the property, and the insurance never lapsed. *Id.* at ¶ 11. Plaintiff adds that the Owners Association "identified PHH as certificate holder for the blanket insurance policy," and that proof of the coverage and the requirement for Owners Association to maintain coverage are "contained in the collateral file that Ocwen, and now PHH, has in its possession and control." *Id.* The Amended Complaint alleges that at all relevant times Defendant "had notice that CWELT's condominium was covered by a master flood and/or hazard insurance policy" and that Defendant or Ocwen "took no action after receiving this notice" nor challenged the "adequacy of the blanket flood and/or hazard insurance." *Id.* at ¶ 12.

---

So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then (i) Lender waives the provision in Section 3 for the monthly payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of this loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

*See* ECF No. [32-1] at 17-18.

3

The Amended Complaint alleges that in March 2015, Deutsche Bank National Trust Co., as trustee, filed an action to foreclose on the first lien on the subject property for the underlying mortgage (the "Foreclosure Action"). *Id.* at ¶ 13.[4] Ocwen was identified as "Attorney-in-Fact" for Deutsche Bank National Trust Company as trustee in the Foreclosure Action. *Id.* On March 7, 2019, Plaintiff purportedly contacted counsel for Ocwen "to determine what amounts were left unpaid on the mortgage so that CWELT could purchase the property outright, with a clear title." *Id.* This process was conducted through the transmittal of an "estoppel letter" pursuant to Fla. Stat. § 701.04. *Id.* On March 25, 2019, Ocwen's counsel provided a claimed payoff in response to Plaintiff's communication, in which it purportedly "acknowledged that it was written in an attempt to collect a debt, namely, the claimed payoff." *Id.* at ¶ 16. On May 1, 2019, Ocwen's counsel supplemented its response "with a breakdown of those amounts it claimed remained owing on the mortgage that CWELT would have to pay if CWELT wanted to clear the property's title." *Id.* at ¶ 17. Specifically, Ocwen claimed that "$6,908.21 remained owing on the mortgage for the purchase of flood and/or hazard insurance." *Id.* at ¶ 17. On November 12, 2019, Ocwen's counsel reportedly emailed Plaintiff's representative to explain that its CWELT file had been transferred to Defendant. *Id.* at ¶ 18.

The Complaint asserts a single count for violation of the FDUTPA. Plaintiff alleges that Defendant's "unfair practices involve[ed] the unjustified imposition of flood and/or hazard

---

[4] The Amended Complaint does not attach a copy of the Foreclosure Action docket. However, Defendant has attached a copy of the docket in the matter styled as *Deutsche Bank National Trust Company as Trustee for GSAA Home Equity Trust 2006-11, Asset-Backed Certificates Series 2006-11 v. Victor Anaya, et al.*, Case No. 2015-007371-CA-01, Miami-Dade County Circuit Court. *See* ECF No. [31-2]. Defendant requests that the Court take judicial notice of the Foreclosure Action. *See* ECF No. [31] at 2. Because the docket is a public record, the Court will consider it at this stage. *See, e.g.*, *Gulf Ins. Co. v. Wells Fargo Bank, N.A.*, No. 19-CV-60027, 2019 WL 1128363, at *3 (S.D. Fla. Mar. 12, 2019) (noting that a "district court may properly take judicial notice of state court documents on a motion to dismiss" and examining the state court docket).

insurance premiums when in fact CWELT and class members condominiums were already covered by flood and/or hazard insurance." *Id.* at ¶ 36. Plaintiff maintains that Defendant "had no reasonable basis to believe that CWELT's and the class members' condominiums were not covered by flood and/or hazard insurance" and that Defendant "did nothing to investigate whether [Plaintiff's] or class members' condominiums were insured against flood or hazard damage." *Id.* at ¶ 37. Further, Plaintiff alleges that Defendant "had notice of the blanket or master insurance coverage" and the Condominium Rider "does not impose the notice obligation on the borrower; under applicable rules of construction, the obligation to ascertain whether blanket and/or master insurance coverage exists is on the borrower and/or PHH, which is retained to service these mortgage contracts." *Id.* According to Plaintiff, it and the purported class members suffered actual damages, "namely, the improper and unwarranted imposition and/or collection of charges for flood and/or hazard insurance premiums in breach of the mortgage contracts." *Id.* at ¶ 39.

The Complaint seeks four main categories of relief: 1) an order certifying the proposed class and appointing its attorneys as class counsel; 2) an order requiring that Defendant cease imposing flood and/or hazard insurance premiums where it was listed as certificate holder on the blanket or master flood and/or hazard insurance already covering the subject property; 3) an order requiring Defendant to pay back to class members all monies improperly collected for the purpose of paying flood and/or hazard insurance premiums; and 4) an order requiring Defendant to withdraw any pending demands for premium payments from class members to pay flood and/or hazard insurance premiums where the property was already covered by a blanket or master flood and/or hazard insurance. *See* ECF No. [25] at Wherefore Clause; *see also id.* at ¶ 3.

Defendant now moves to dismiss the Amended Complaint with prejudice. *See* ECF No. [31]. Specifically, Defendant asserts that Plaintiff's claims are barred by the Florida litigation privilege and that Plaintiff does not have standing under FDUTPA. Additionally, Defendant

contends that, on the merits, the Complaint fails to state an actionable FDUTPA claim. In this respect, Defendant makes six sub-arguments: 1) PHH never communicated with Plaintiff until 2019, after the insurance had been purchased, and thus the FDUTPA claim fails for lack of causation; 2) the FDUTPA claim hinges on an alleged breach of contract, but there was nothing deceptive about the contract between PHH and the borrower; 3) Defendant did not engage in any deceptive or unfair acts because the language in the mortgage permitted PHH to obtain lender-placed insurance; 4) imposing an insurance policy to protect the lender's interest in the property is not "trade or commerce" under the FDUTPA; 5) Plaintiff has not alleged actual damages; and 6) the Eleventh Circuit's decision in *Alhassid v. Nationstar Mortgage, LLC*, 771 F. App'x 965 (11th Cir. 2019) is distinguishable. *See generally* ECF No. [31].

Plaintiff responds that dismissal is inappropriate because it has asserted a prima facie FDUTPA claim. ECF No. [37] at 4-5. It also argues that Defendant's purchase of duplicative flood insurance breached the terms of the Condominium Rider because Defendant had actual knowledge of the master or blanket flood insurance and, in Plaintiff's view, the Condominium Rider placed the burden on Defendant to identify whether there exists duplicative coverage. *Id.* at 5-8. Plaintiff maintains that *Alhassid* is not materially distinguishable from the instant case, *id.* at 8-9, and it further argues that resolving privilege issues is premature at this stage but, in any event, the Florida litigation privilege does not apply to the improper imposition of debt. *Id.* at 10-12. Plaintiff adds that it has standing to bring a FDUTPA claim, *id.* at 12-13, it has alleged causation, *id.* at 13-14, and Defendant's contract arguments fail. Specifically, Plaintiff asserts that Defendant raised a strawman argument concerning lack of liability because it was not a party to the contract, and that Defendant misconstrues the Condominium Rider in light of the factual allegations. *Id.* at 14-16. Finally, Plaintiff contends that Defendant's conduct constituted "trade or commerce" under the FDUTPA, and that it has alleged damages. *Id.* at 16-18.

In its Reply, Defendant argues that dismissal is appropriate because there was no relationship between Plaintiff and Defendant, and that it was the mortgagor's obligation to make sure the property was insured. ECF No. [38] at 2. Additionally, it argues that the subject estoppel letter "clearly related to the Foreclosure Action" and thus all claims related to it are barred by the Florida litigation privilege, and that Plaintiff does not owe the debt and thus pleads no cognizable damage. *Id.* Further, it argues that the cases Plaintiff cites are either distinguishable or inapplicable. *Id.* at 8-10. The Motion, accordingly, is ripe for consideration.

## II.     LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*quoting Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304

F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937).

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and the attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

Moreover, claims under the FDUTPA "are subject to the federal rules' 'heightened' pleading standard under Rule 9(b)." *Toca v. Tutco, LLC*, No. 19-CV-23949, 2020 WL 1041502, at *8 (S.D. Fla. Mar. 4, 2020); *see also USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257, at *3 (S.D. Fla. Feb. 16, 2016) (noting that courts "regularly apply Rule 9(b) to FDUTPA claims, as such claims uniquely sound in both tort and fraud"). It is through this lens that the Court addresses the instant Motion.

### III.    DISCUSSION

Determining whether Defendant is entitled to the relief it requests raises three overarching issues. The first is whether Plaintiff has standing under FDUTPA. If so, the second is whether Plaintiff's claims are barred by the Florida litigation privilege. And finally, whether Plaintiff stated an actionable FDUTPA claim.

### A.    Standing exists but Plaintiff fails to plead FDUTPA elements

#### i.    *Standing*

Defendant asserts that the Complaint is clear that Defendant imposed lender-placed insurance "against Anaya [the borrower], not CWELT, and therefore CWELT lacks standing under FDUTPA." ECF No. [31] at 15. It adds that Plaintiff "never purchased anything from PHH, and PHH dealt only with Anaya" except for Plaintiff's communications with Defendant's counsel in 2019. *Id.* Thus, in Defendant's view, Plaintiff lacks standing to bring this action because Defendant had no dealings with Plaintiff prior to imposing the insurance. *Id.*

One of the stated purposes of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). FDUTPA is to be construed "liberally" to promote its underlying policies. *Id.* at § 501.202. Both parties agree that to have standing under FDUTPA, the plaintiff must be a "person." *See* ECF No. [31] at 15; ECF No. [37] at 5. *See also* Fla. Stat. § 501.211(2) (conferring standing on "a person who has suffered a loss as a result of a violation of this part"); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (holding that "the legislative change regarding the claimant able to recover under FDUTPA from a 'consumer' to a 'person' must be afforded significant meaning. This change indicates that the legislature no longer intended FDUTPA to apply to only consumers, but to other

entities able to prove the remaining elements of the claim as well"). Further, a claim for damages under FDUTPA requires a showing of three elements: a deceptive act or unfair practice, causation, and actual damages. *Caribbean Cruise Line, Inc.*, 169 So. 3d at 167 (citation omitted).

Under Florida law, a party need not be a consumer to bring a FDUTPA claim. *See id.* at 166-69 (reversing trial court's dismissal of FDUTPA claim where the lower court determined that plaintiff lacked standing because it was not in a consumer relationship with defendant, and noting that "while the claimant would have to prove that there was an injury or detriment to consumers in order to satisfy all of the elements of a FDUTPA claim, the claimant does not have to be a consumer to bring the claim") (emphasis omitted); *see also Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) (explaining that competitors have standing to bring FDUTPA claims and that recovery of damages under the FDUTPA is not limited to consumers).[5] However, to have

---

[5] Defendant's citation to *Raimbeault v. Accurate Machine & Tool, LLC*, No. 14-cv-20136, 2014 WL 5795187, at *7 (S.D. Fla. Oct. 2, 2014) for the proposition that a "person" under FDUTPA only applies to "'consumers' who engage in the 'purchase of goods and services'" does not reflect current Florida law. The *Raimbeault* decision was based on *Carrol v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669 (S.D. Fla. May 6, 2014), which concluded that FDUTPA is "ambiguous as to who can bring suit under Fla. Stat. § 501.211(2)" and recognized that at that time there was "no Florida state court decision on point" regarding whether the 2001 statutory amendment "expanded the statute to reach non-consumers[.]" *Id.* at *3. That court ultimately determined that "person" "applies only to 'consumers'" and that the Florida legislature "did not intend to expand the FDUTPA to non-consumers." *Id.* Since then, Florida state courts have ruled uniformly that non-consumers can bring FDUTPA actions. *See, e.g.*, *Caribbean Cruise Line, Inc.*, 169 So. 3d at 169; *Bailey*, 196 So. 3d at 383; *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2 (Fla. 3d DCA 2016) (noting that it is "correct that section 501.211(2) no longer requires one to be a 'consumer' to maintain an action for damages under FDUTPA"). *See also Chiron Recovery Ctr., LLC v. AmeriHealth Hmo of New Jersey, Inc.*, No. 9:16-CV-82043, 2017 WL 4390169, at *6-7 (S.D. Fla. Oct. 3, 2017) (following the "determinations of the Florida District Courts of Appeal that non-consumers may sue under FDUTPA" because although there is a split in the federal district courts, "the state appellate courts that have ruled on the issue have determined that non-consumers have standing under FDUTPA" and "federal district courts interpreting state law 'are bound to follow any decisions of the state's intermediate appellate courts'" when a state supreme court has not ruled on an issue) (citations omitted).

standing, a party must still be "able to prove the remaining elements of the claim[.]" *Caribbean Cruise Line*, 169 So. 3d at 169.

Here, Plaintiff alleges that it purchased the condominium unit and acquired titled "subject to the previous owner's mortgage." ECF No. [25] at ¶ 9. It also alleges that it contacted Ocwen's counsel "to determine what amounts were left unpaid on the mortgage so that CWELT could purchase the property outright." *Id.* at ¶ 14. Ocwen's counsel reportedly provided a breakdown of amounts they "claimed remained owing on the mortgage that CWELT would have to pay if CWELT wanted to clear the property's title," and CWELT alleges that it suffered actual damages comprised of "premium amounts improperly charged and/or collected" by Defendant. *Id.* at ¶¶ 17, 40. Taking the allegations as true, Plaintiff has standing to bring a FDUTPA claim. However, Plaintiff has failed to allege causation or the "trade and commerce" requirements for FDUTPA, which in turn supports dismissal.

### ii.    Causation

FDUTPA "does not require a plaintiff to prove actual reliance on the alleged conduct" but, instead, a plaintiff must prove that the "alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009). *See also Maor v. Dollar Thrifty Auto. Grp., Inc.*, No. 15-22959-CIV, 2018 WL 4698512, at *6 (S.D. Fla. Sept. 30, 2018) ("To prove the causation element of a FDUTPA claim, "a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that a reasonably objective person [in the same circumstances as Plaintiff] would have been deceived.") (citation omitted; no alteration added).

In *Maor*, plaintiff entered into a contract to rent a car from defendants. The rental contract contained a provision that provided for charging certain customers toll costs and an administrative fee per use of an electronic toll booth. 2018 WL 4698512 at *1. Specifically, at the time of rental,

customers are given the option to purchase defendants' toll package, and those that decline to purchase the package are required to pay for any electronic tolls incurred plus an "administrative fee" of $15 per occurrence. *Id.* Plaintiff declined to purchase the optional toll package, and before he declined the package, he was shown information about the terms of the rental agreement, which included information about an administrative fee charge per toll that would be incurred if he drove through any tolls. *Id.* Plaintiff then rented the car, drove on a toll road, and later received a toll notice from a third-party service provider assessing a $15 administrative fee for the toll violation. *Id.* at *2. The toll notice included a reference to frequently asked questions ("FAQs"), which in turn provided that the administrative fee was charged "to cover the costs of processing your citation." These FAQs were not referenced in the rental agreement nor provided at the rental counter nor referenced by the counter agent. *Id.* Plaintiff paid the administrative fee and then sued for a FDUTPA violation among other claims. In particular, plaintiff argued that the "administrative fee" was deceptive because such a fee was supposed to be akin to a "pass through charge." *Id.* at *6.

On summary judgment, defendants argued that there was nothing deceptive about the term "administrative fee," and because plaintiff did not see or read the alleged misrepresentation, it cannot prove causation. *Id.* The court agreed. In particular, after concluding that there was nothing deceptive about the term "administrative fee," the court explained that

> While Plaintiff argues that the toll notice/FAQs contain deceitful statements with regards to the nature and purpose of the 'administrative fee,' they cannot form the basis of the FDUPTA [sic] claim. While individual reliance is not required, the purported deception must be *available* to a reasonably objective consumer at the time he/she entered into the transaction. However, a consumer who chose to decline Defendants' optional toll package and incurred a toll, and thereby an administrative fee, would not receive the toll notice/FAQs until well after entering into the transaction and returning his/her rental vehicle; and because the term 'administrative fee' does not constitute deception to a reasonably objective consumer, said consumer would have no reason to inquire further into the nature or purpose of the administrative fee at the time he/she entered into the transaction.

*Id.* (emphasis in original). Here, the imposition of duplicative insurance on Anaya's mortgage occurred *prior* to Plaintiff's discovery of Defendant's allegedly wrongful practice. Like the plaintiff in *Maor*, if there was any deception, it was only after-the-fact and, thus, the FDUTPA claim consequently fails for lack of causation. Further, such deception would have been directed to Anaya, not Plaintiff.[6] In this respect, Defendant rightfully acknowledges that the Complaint is "completely silent as to whether Anaya was exposed to any deceptive act by PHH prior to the imposition of the insurance, nor whether Anaya would have acted differently if he was." ECF No. [31] at 16. Therefore, the Complaint fails to establish causation because Plaintiff does not allege a practice that is "likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone Creamery, Inc.*, 332 F. App'x at 567.

### iii.        Trade or commerce

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204(1). "Trade or commerce" is defined as the "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Id.* at § 501.203(8).

---

[6] Plaintiff asserts that it has sufficiently alleged causation based on *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 161 F. Supp. 3d 1209 (S.D. Fla. 2015). That case did not involve duplicative insurance but instead an alleged scheme by defendants to force-place insurance coverage at grossly excessive and unreasonable prices unrelated to the provision of LPI while keeping a portion of the excessive premiums as kickbacks or other remuneration. *Id.* Thus, in that case, the court determined that causation "may be found when [defendant] chose to purchase the allegedly excessively-priced LPI from QBE and charged Plaintiffs and other Florida borrowers for it." *Id.* at 1221. That court found a sufficient causal link because "the harm Plaintiffs suffered (excessive and unreasonable LPI amounts charged to their accounts) was a foreseeable result of" defendant's conduct. *Id.* Here, by contrast, there are no kickback allegations, and any deception would have been directed at Anaya.

Courts have noted that the "trade or commerce" requirement is "often not met in cases dealing with borrowers alleging FDUTPA violations against mortgage servicers." *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013) (dismissing with prejudice FDUTPA claim against loan servicer because "even assuming the facts as pled establish that the defendant engaged in deceptive acts or unfair trade practices, the loan servicer's actions do not qualify as 'trade or commerce'"); *Acosta v. James A. Gustino, P.A.*, No. 6:11-CV-1266-ORL-31, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012) (dismissing FDUTPA claims because "an attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8)," and holding that defendants "were not engaged in 'trade or commerce' when they sent demand letters and otherwise engaged in their debt collection efforts").

Defendant argues that imposing insurance to protect the lender's interests in the property is not "trade or commerce" under FDUTPA. ECF No. [31] at 22. This Court has previously found that if the allegations of a complaint were simply "loan collection activities, even if those activities were improper, FDUTPA would not apply." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014) (denying motion to dismiss FDUTPA claim where servicer allegedly "assessed and sought to collect fees outside the scope of its legal entitlement" and billed for specific services that were unauthorized and which defendant never performed). Likewise, this Court has previously dismissed with prejudice FDUTPA claims based on loss mitigation activities by mortgage loan servicers. *See Rodriguez v. Ocwen Fin. Corp.*, No. 17-CV-60574, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017). Here, Plaintiff was not a borrower under the loan. Instead, the allegations reflect that Defendant was a loan servicer, ECF No. [25] at ¶¶ 5, 12, and that Defendant provided an estoppel letter to Plaintiff when requested by Plaintiff. *Id.* at ¶¶ 13-17. Further, pursuant to Fla. Stat. § 701.04(1), Defendant was legally obligated to provide the estoppel

letter upon Plaintiff's request. Based on the allegations, Plaintiff fails to demonstrate that Defendant's alleged actions fall within the purview of trade or commerce. *See Rodriguez*, 2017 WL 3593972 at *6 ("As with mortgage enforcement generally, a loan servicer's handling of a loss mitigation application—obligatory and reactive in nature—does not involve the loan servicer's 'advertising, soliciting, providing, offering, or distributing' anything to borrowers."). Dismissal is, therefore, appropriate.

### B.    Florida litigation privilege

Defendant argues that the FDUTPA claim arose from an estoppel letter sent to Plaintiff in relation to the Foreclosure Action and, consequently, the claim is barred by Florida's litigation privilege. ECF No. [31] at 7, 12-15. In support, Defendant contends that the privilege "grants Ocwen/PHH immunity from CWELT's claims which arose from communications in the Foreclosure Action" because the privilege is "absolute" and applies to "any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Id.* at 13 (citations omitted). It contends that the litigation privilege applies to FDUTPA claims. *Id.* Additionally, Defendant asserts that settlement correspondence is privileged, and that the "only question here is whether the estoppel letter bore 'some relation' to the Foreclosure Action." *Id.* at 13-14. Defendant also recognizes that although the litigation privilege is ordinarily considered at later stages of litigation, it may be considered at this stage when "the complaint affirmatively and clearly shows the conclusive applicability" of the privilege. *Id.* at 14 (citation omitted).

In response, Plaintiff asserts that the litigation privilege applies only to communications arising out of a judicial proceeding, and that "[t]his is not a case about a communication" but rather is a "case about charging an improper debt." ECF No. [37] at 10-11 (emphasis omitted). Plaintiff then argues that ruling on privilege issues is premature but nonetheless "[t]he Court is positioned to resolve PHH's litigation privilege now, as a matter of law: It is inapplicable because PHH

attempts to apply it to an act – the imposition of a debt for which PHH intended to be paid." *Id.* at 12.

Upon review, the Court finds that it has a proper record before it to "affirmatively and clearly show[] the conclusive applicability" of the litigation privilege. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2005). *See also LatAm Inv., LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 245 (Fla. 3d DCA 2011) (litigation privilege "can be adjudicated on a motion to dismiss if the applicability of the privilege can be clearly discerned from the face of the complaint"). First, while Plaintiff asserts that the significance of the estoppel letter cannot be ascertained, ECF No. [37] at 12, the Amended Complaint alleges that the estoppel letter was sent by attorneys for Ocwen, plaintiffs in the Foreclosure Action, to CWELT, a defendant in that lawsuit, to resolve that action so that "CWELT could purchase the property outright, with a clear title." ECF No. [25] at ¶¶ 13-17. *See Bloch v. Wells Fargo Home Mortg.*, No. 11-80434-CIV, 2012 WL 12862806, at *5 (S.D. Fla. June 13, 2012) ("[A]ll of the alleged actions were made during the pending foreclosure proceeding in attempt to settle those proceedings. Any written correspondence to Plaintiffs during the underlying foreclosure lawsuits necessarily is protected by the litigation privilege[.]"); *McCullough v. Kubiak*, 158 So. 3d 739, 740 (Fla. 4th DCA 2015) ("Because such alleged statements were made during the course of a judicial proceeding and allegedly bore some relation to settlement negotiations in that proceeding, the statements were absolutely privileged."). Indeed, as alleged in the Complaint, Plaintiff contacted counsel for Ocwen "as identified in the foreclosure complaint." *Id.* at ¶ 14.[7]

---

[7] Plaintiff asserts that it was not a party to the Foreclosure Action. ECF No. [37] at 12. However, the Foreclosure Action docket reflects that Plaintiff is a named defendant in that lawsuit, although it has contested service of process. *See* ECF No. [31-2] (entry nos. 81, 86, and 88).

Plaintiff further argues that it suffered damages by Defendant's alleged actions because in the Foreclosure Action, Defendant's predecessor "acknowledged that the flood insurance constituted a debt owed by CWELT." ECF No. [37] at 18 (citing ECF No. [25] at ¶ 16 ("The letter acknowledged that it was written in an attempt to collect a debt, namely, the claimed payoff.")). Thus, by claiming damages arising from communications and acts made during the Foreclosure Action, the estoppel letter bears "some relation" to the Foreclosure Action and thus implicates the litigation privilege. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) (litigation privilege applies to "any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding"); *James v. Leigh*, 145 So. 3d 1006, 1008 (Fla. 1st DCA 2014) ("[C]ourts have not imposed a strict relevancy test in determining whether a statement made during the course of a judicial proceeding is entitled to immunity so long as the statement 'has some relation to the proceeding.'").

Second, although Plaintiff asserts that rights created by Fla. Stat. § 701.04 are "unrelated" to litigation, it fails to address Defendant's contention that, if so, Defendant would nonetheless not be liable for any actions arising out of providing the estoppel letter. *See id.* at § 701.04(1)(b)(3) ("If a record title owner of the property, or any person lawfully authorized to act on behalf of a mortgagor or record title owner of the property, makes the request: . . . The mortgagee or servicer of the mortgagee acting in accordance with a request in substantial compliance with this paragraph is expressly discharged from any obligation or liability to any person on account of the release of the requested information, other than the obligation to comply with the terms of the estoppel letter."). Plaintiff, therefore, fails to show how it has an actionable FDUTPA claim against Defendant even if it had stated the necessary elements. Under these circumstances, dismissal is warranted.

17

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [31]**, is **GRANTED**.

2. The Complaint, **ECF No. [25]**, is **DISMISSED** *with prejudice*.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**,

    all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED**.

4. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 27, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record